[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

Nos. 22-11059, 22-10877, 22-11060, 22-10889

_____

POSITANO PLACE AT NAPLES I CONDOMINIUM
ASSOCIATION, INC.,
a Florida not-for-profit Corporation,

POSITANO PLACE AT NAPLES II CONDOMINIUM
ASSOCIATION, INC.,
a Florida not-for-profit Corporation,

POSITANO PLACE AT NAPLES III CONDOMINIUM
ASSOCIATION, INC.,
a Florida not-for-profit Corporation,

POSITANO PLACE AT NAPLES IV CONDOMINIUM
ASSOCIATION, INC.,
a Florida not-for-profit Corporation,

Plaintiffs-Appellees,

*versus*

EMPIRE INDEMNITY INSURANCE COMPANY,

Defendant-Appellant.

————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket Nos. 2:21-cv-00178-SPC-MRM, 2:21-cv-00181-SPC-
MRM, 2:21-cv-00183-SPC-MRM, 2:21-cv-00186-SPC-MRM

————————————

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

On our own motion, we vacate our prior opinion, and substitute it with the following opinion. Empire's motion for panel rehearing is denied as moot.

These appeals[1] are about a pending insurance contract dispute between Positano Place at Naples I Condominium Association, Inc., and Empire Indemnity Insurance Company, which issued an insurance policy (the "Policy") to Positano for coverage of five buildings that Positano owns in Naples, Florida. Following Hurricane Irma, Positano filed a first-party claim for property insurance benefits under the Policy, claiming that Hurricane Irma

---

[1] We previously consolidated case numbers 22-11059, 22-10877, 22-11060, and 22-10889 for purposes of hearing oral argument in those cases. We now *sua sponte* consolidate those cases for purposes of resolving these appeals.

damaged its property and that the damage was covered by the Policy. After Empire investigated Positano's claim, Empire determined that there was coverage as to only three of the five buildings covered by the Policy but disagreed as to the amount of the loss. In response, Positano sought to invoke appraisal based on the Policy's appraisal provision. When Empire did not respond to Positano's appraisal demand, Positano sued Empire in Florida state court, and Empire removed the case to federal court based on diversity jurisdiction.

Following removal, Positano moved to compel appraisal and to stay the case pending the resolution of the appraisal proceedings, which Empire opposed. The magistrate judge issued a report recommending that the district court grant Positano's motion, and, over Empire's objection, the district court ordered the parties to appraisal and stayed the proceedings pending appraisal. Empire timely appealed the district court's order.

We issued a jurisdictional question to the parties asking them to address whether this Court had appellate jurisdiction over an order that compelled appraisal, stayed the case pending appraisal, and directed the parties to file status reports on the appraisal process. We also asked the parties to address whether orders compelling appraisal are treated the same as orders compelling arbitration for purposes of appellate jurisdiction.

After careful review, and with the benefit of oral argument, we conclude that the district court's order compelling appraisal and staying the proceedings pending appraisal is an interlocutory order

that is not immediately appealable under 28 U.S.C. § 1292(a)(1). We also conclude that the order compelling appraisal and staying the action pending appraisal is not immediately appealable under the Federal Arbitration Act ("FAA").  Accordingly, for the reasons stated below, we dismiss the appeal for lack of appellate jurisdiction.

## I.    RELEVANT BACKGROUND[2]

Empire issued the Policy to Positano for five buildings owned by Positano in Naples, Florida (the "Insured Property"). The Policy has a total coverage value in the millions of dollars, and each of the buildings is separately scheduled and subject to a 3 percent hurricane deductible.  The Policy contains the following appraisal provision:

> **Mediation Or Appraisal**
> If we and you:
>
> . . . .
>
> **B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a

---

[2] In these consolidated appeals, the facts, procedural histories, and arguments made below and on appeal are largely the same.  For purposes of this opinion, our discussion of the facts and procedural history focuses on those in *Positano Place at Naples I Condominium Association, Inc., v. Empire Indemnity Insurance Company*, No. 22-11059.

court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.
However, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss, if we:
1. Requested mediation and either party rejected the mediation result; or
2. Failed to notify you of your right to participate in the mediation program.

On September 10, 2017, Hurricane Irma struck Naples. Nearly seven months later, Positano notified Empire of storm damage to the Insured Property. Empire investigated the claim and inspected the Insured Property. Empire and Positano exchanged a series of letters relating to Positano's claim over a period of approximately three years. The details of those letters are not relevant to the issue before us. Suffice it to say that the parties disagreed about the amount of covered losses incurred by Positano as a result of Hurricane Irma.

At some point during this process, Positano sent a written request for appraisal to Empire. After Positano's appraisal request went unanswered, it filed a complaint against Empire in Florida

state court.  Empire subsequently removed the action to the United States District Court for the Middle District of Florida on the basis of diversity jurisdiction.  After its initial complaint was dismissed in part, Positano filed its amended complaint.  In its amended complaint,  Positano asserted three claims: (1) specific performance; (2) breach of contract; and (3) declaratory judgment.  As to specific performance, Positano alleged that the Policy's appraisal provision demonstrated the parties' intention to have disputes related to causation, scope, and loss be resolved through the appraisal process upon either party's demand.  It alleged that the parties' dispute was not a coverage dispute but a dispute over the amount of loss.  As to the breach of contract claim, Positano alleged that Empire acknowledged loss and coverage but had failed to comply with its contractual obligations to engage in the appraisal process and had not paid in full for the covered losses suffered by Positano.  And, as to the declaratory judgment claim, Positano asked the district court to declare, among other things, that it had "properly invoked the Policy's appraisal provision."

Empire's answer asserted nineteen affirmative defenses against Positano's claims.  Many of these affirmative defenses are coverage defenses, and, at the time this appeal was filed, the district court had not issued any dispositive rulings as to those coverage defenses.

Positano then moved to compel appraisal and to stay the proceedings pending completion of appraisal.  The district court referred the motion to compel to a magistrate judge.  The

magistrate judge issued a report recommending that the district court grant Positano's motion, finding that Empire did not dispute Positano's assertion that a "dispute has arisen over the scope and amount of [its] damages" and that requiring the parties to engage in appraisal was therefore appropriate.

As relevant to this appeal, the magistrate judge rejected Empire's contention that "compelling appraisal is an injunctive remedy in the form of specific performance," which cannot be required because Positano failed to show entitlement to specific performance, and concluded that Positano was not required to plead and prove the elements of specific performance to compel appraisal because Florida case law suggested that methods of alternative dispute resolution, e.g., appraisal, should be employed when possible. The magistrate judge also rejected Empire's argument that appraisal could not be compelled absent a final determination about whether it breached the Policy's appraisal provision. The magistrate judge explained that, unlike summary judgment, an appraisal does not determine whether there is a genuine disputed material fact or there is entitlement to judgment and can be sought through breach of contract and declaratory judgment actions as a form of alternative dispute resolution.

The district court accepted and adopted the report and recommendation in full, and also provided additional analysis in its order. As relevant to this appeal, the district court addressed Empire's argument that Positano must first obtain judgment in its favor for specific performance before an appraisal could take place.

The district court explained that "[t]he problem for Empire—and for Positano in its attempt to plead a count for specific performance (as an alternative to its breach of contract and declaratory relief counts)—is that the appraisal process is not remedial." The district court noted that participation in the appraisal process would not remedy the damages caused by Hurricane Irma; it would simply be "one step in this process, supplying an extra-judicial mechanism to calculate the amount of loss." The district court stated that appraisal is a form of alternative dispute resolution and that its "source of authority to order the parties to participate in an alternative dispute process comes from its subject-matter jurisdiction over a contract dispute where the contract contains a provision where the parties contracted for the right to have amount-of-loss disputes decided informally by experienced appraisers." And the district court stated that appraisal would not dispose of any of the claims or defenses.

This appeal ensued. During this appeal, we issued a jurisdictional question to the parties asking them to address the basis of our jurisdiction to review the order compelling appraisal in this case as well as whether an order compelling appraisal is treated the same as an order compelling arbitration for purposes of appellate jurisdiction. Following the parties' briefing, we carried the jurisdictional issue with the case and now resolve it in this opinion.

## II.    STANDARD OF REVIEW

We review *de novo* an order granting a party's motion to compel appraisal. *See Jacobs v. Nationwide Mut. Fire Ins. Co.*, 236 F.3d

22-11059                Opinion of the Court                    9

1282, 1285 (11th Cir. 2001).  We also review *de novo* our appellate jurisdiction.  *Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195, 1200 (11th Cir. 2020).

## III.    ANALYSIS

"We have a duty to assure ourselves of our jurisdiction at all times in the appellate process."  *Id.* (quoting *Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir. 2019)). Therefore, before we can review the order compelling appraisal in this case, we must determine whether we have jurisdiction to do so.  *See World Fuel Corp. v. Geithner*, 568 F.3d 1345, 1348 (11th Cir. 2009).  For an order to be appealable, it "must either be final or fall into a specific class of interlocutory orders that are made appealable by statute or jurisprudential exception."  *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000); *see* 28 U.S.C. §§ 1291–92.  Title 28 U.S.C. § 1291 provides us with appellate jurisdiction of final decisions of the district courts, while § 1292 provides for review of certain classes of interlocutory orders.  Additionally, for an order disposing of a request to compel arbitration, the FAA governs the appealability of such an order.  *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 939 (11th Cir. 1997).

We begin our analysis by addressing whether we have appellate jurisdiction under either 28 U.S.C. § 1291 or 28 U.S.C. § 1292.  We then explain why we do not have appellate jurisdiction under the FAA.

### A.  Whether the Order Compelling Appraisal Is Appealable Under 28 US.C. §§ 1291 or 1292(a)

Under § 1291, the federal courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." "A final decision is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *CSX Transp.*, 235 F.3d at 1327 (quoting *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983)). When "a district court anticipates that further proceedings on substantive matters may be required, any order it makes to facilitate those further proceedings is necessarily not final." *Broussard v. Lippman*, 643 F.2d 1131, 1133 (5th Cir. Unit A Apr. 1981).[3]

Here, we conclude that the order compelling appraisal in this case is not a final order appealable under § 1291. In its order, the district court explicitly contemplated further proceedings, explaining that the appraisal would not dispose of any of the claims in the case nor Empire's coverage defenses. Further, in Florida, "[a]ppraisal exists for a limited purpose—the determination of 'the amount of the loss.'" *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. Dist. Ct. App. 2013). "[A]n agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and 'amount of loss,'" and "all issues other than those contractually assigned to the appraisal panel are reserved for determination in a plenary action." *Id.* at 1229. And notably, Florida courts do not consider an order

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

compelling appraisal to be a final order.  *See, e.g., People's Tr. Ins. Co. v. Garcia*, 263 So. 3d 231, 233 (Fla. Dist. Ct. App. 2019); *see also* Fla. R. App. 9.130(a)(3)(C)(iv) ("Appeals to the district courts of appeal of nonfinal orders are limited to those that . . . determine . . . the entitlement of a party to . . . an appraisal under an insurance policy.").  Thus, we do not have appellate jurisdiction to review the order compelling appraisal under § 1291, as it is not a final order.

Because the order compelling appraisal is not a final order appealable under § 1291, we now turn to the question of whether it falls within one of the classes of appealable, interlocutory orders under § 1292.  In doing so, we are mindful that "interlocutory appeals are inherently "disruptive, time-consuming, and expensive," and thus "are generally disfavored." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 294 (1st Cir. 2000)).

Section 1292(a) creates a narrow exception from the "long-established policy against piecemeal appeals." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978).  Under that statute, the courts of appeals have appellate jurisdiction over certain classes of interlocutory orders, including interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." § 1292(a)(1).  Thus, as a threshold matter, we must determine whether the district court's order that only compelled appraisal, and stayed the proceedings pending the appraisal process, was an explicit grant of an injunction.

While Empire argues that the district court's order here explicitly granted an injunction, we disagree. As an initial matter, while the district court did not characterize its order as the grant of an injunction, we are not governed by that characterization. *Birmingham Fire Fighters Ass'n 117 v. Jefferson County¸* 280 F.3d 1289, 1292 (11th Cir. 2002). "Instead, we make our own determination, and in doing so we take a 'functional approach, looking not to the form of the district court's order but to its actual effect.'" *Id.* at 1293 (quoting *Sierra Club v. Marsh*, 907 F.2d 210, 213 (1st Cir. 1990)). Taking this approach, we conclude that the appraisal order is not the explicit grant of an injunction for the following reasons. First, Positano did not move for an injunction, nor did it pursue any claim for injunctive relief in its operative complaint. Rather, Positano simply moved to compel appraisal based on the appraisal provision in the Policy that was agreed to by the parties. Second, in granting the motion, the district court did not make the findings of fact and conclusions of law that normally support an order granting injunctive relief. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." (quoting *Siegal v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc))). Nor did the district court comply with the requirements set forth in Federal Rule of Civil

22-11059                Opinion of the Court                13

Procedure 65(d).[4] *Cf. Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1247 (11th Cir. 2012) (Pryor, J., concurring) ("'[T]he absence of any semblance of effort by the [d]istrict [c]ourt to comply with Rule 65(d)' is evidence that the district court did not intend to enter 'an order granting an injunction.'" (quoting *Gunn v. Univ. Comm. to End the War in Viet Nam*, 399 U.S. 383, 389 n.4 (1970))).

Instead, in compelling the parties to appraisal, the district court emphasized that "the appraisal process is *not remedial*." (Emphasis added). The court reasoned that "[j]ust as an order requiring the parties to attend a mediation is not remedial, participation in the appraisal process will not remedy the damages caused by Hurricane Irma." The court explained that appraisal was simply "one step in this process, supplying an extra-judicial mechanism to calculate the amount of loss." *See also State Farm Fla. Ins. Co. v. Crispin*,

---

[4] Our dissenting colleague notes that, in *Abbott v. Perez*, 138 S. Ct. 2305, 2321 (2018), the Supreme Court stated that it had "never suggested that a failure to meet the specificity requirements of Rule 65(d) would 'deprive the Court of jurisdiction.'" Dis. Op. at 15–16. However, our consideration of the district court not complying with the requirements of Rule 65(d) relates only to whether the appraisal order is an *injunction*, not the ultimate jurisdictional issue presented by this case. As we later explain, we also have appellate jurisdiction over "orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277–78 (1988) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). The Court in *Abbott* explained that the failure to comply with Rule 65(d) is not relevant to the *practical effect* analysis, *see* 138 S. Ct. at 2321, and we likewise do not rely on Rule 65(d) in determining whether the appraisal order had the practical effect of granting an injunction.

290 So. 3d 150, 151 (Fla. Dist. Ct. App. 2020) (describing appraisal as "an insurance contract's alternative dispute resolution process"). And the court noted that appraisal would not dispose of any claims or defenses. Indeed, the appraisal process—a contractual mechanism agreed to by the parties in the Policy—does *not* entitle Positano to judgment on its claims against Empire; the appraisal process here will only resolve the question of the amount of loss. Thus, "[s]o far as we can discern from [the] record, the district court did not intend to issue an injunction" when it entered the order compelling appraisal. *Supreme Fuels*, 689 F.3d at 1247 (Pryor, J., concurring).

Our dissenting colleague, however, concludes that the appraisal order is the explicit grant of an injunction because it ordered Empire to perform an act and is enforceable via the district court's inherent civil contempt power. Dis. Op. at 6–7. It is true that, in *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005), we stated that, to be appealable under § 1292(a)(1), "the interlocutory order appealed must have the first two elements of an injunction," i.e., "it must be: (1) a clearly defined and understandable directive by the court to act or to refrain from a particular action; and (2) enforceable through contempt, if disobeyed." *Id.* at 1128. But, we explained, "merely establishing that the order under consideration is a court order commanding or preventing an action, and enforceable by contempt, does not make it 'an injunction' under § 1292(a)(1)." *Id.* The order must also give "some or all of the substantive relief sought in the complaint" and that "[t]he § 1292(a)(1) exception [to the final judgment rule] does not

embrace orders that have no direct or irreparable impact on the merits of the controversy." *Id.* at 1128–29 (alterations in original) (quoting *Gardner*, 437 U.S. at 482).

For example, an order compelling discovery contains a directive by the court to act and is enforceable by contempt. *See Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (explaining that one of the sanctions a district court may impose under Federal Rule of Civil Procedure 37(b) is an "order treating as a contempt of court the failure to obey" a discovery order); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994) (noting a court's contempt power for a party's failure to comply with document discovery). But an order compelling discovery is not an injunction, as while "all orders of court are mandatory in the sense that they must be obeyed , , , [,] not all orders of [the] court are injunctions." *See Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 386 (5th Cir. 1970). As our predecessor court once explained, "the requirements of a healthy legal system simply do not permit halting the orderly process of a case in midstream to review incidentally matters which cross the current of the litigation," and "[c]onstruing discovery orders as injunctive" would contravene that principle. *See id.* (citing *Cobbledick v. United States*, 309 U.S. 323 (1940)). Rather, as this Court has repeatedly held, orders compelling discovery are interlocutory orders that are generally not appealable. *Robinson v. Tanner*, 798 F.2d 1378, 1380 (11th Cir. 1986); *see also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) ("[W]e have generally denied review of pretrial discovery orders. . . . [I]n the rare case when appeal after final judgment will not cure

an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." (citations omitted)); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112–13 (2009) ("Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process." (quoting C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23, at 123 (2d ed.1992))).

This reasoning similarly holds true here. Again turning to the district court's order compelling appraisal, the order, as we have explained, did not dispose of any of the claims or defenses in this case. Rather, it simply enforced the parties' contractually-agreed-to, extra-judicial mechanism to calculate the amount of loss as to claims made under the Policy. Again, the appraisal process is not remedial, and the result of the appraisal process does not entitle Positano to relief or judgment on its claims against Empire related to Positano's claims for property insurance benefits under the Policy. We therefore respectfully disagree with the dissent's determination that the appraisal order is an explicit grant of an injunction.[5]

---

[5] Our dissenting colleague also asserts that the district court intended to invoke the All Writs Act as a means of issuing the appraisal order, which, in his view, is an injunction. Dis. Op. at 18–20. For a party to obtain an "All Writs Act injunction," which "is predicated upon some [matter other than some cause of action] upon which a district court has jurisdiction," the party "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *See*

Accordingly, we agree with the district court's characterization of its order and hold that the order did not explicitly grant an injunction.[6]

Although we have concluded that the district court's order compelling appraisal is not an explicit grant of an injunction, our analysis of whether the order is appealable under § 1292(a)(1) does not end here. In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), the Supreme Court explained that § 1292(a)(1) also provides appellate jurisdiction over "orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" *Id.* at 287–88 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)); *accord Carson*, 450 U.S. at 84 ("Unless a litigant can show that an interlocutory order . . . might have a 'serious, perhaps irreparable, consequence,' and . . . can be 'effectually challenged' only by immediate appeal, the general

---

*Klay*, 376 F.3d at 1100; *see also* 28 U.S.C. § 1651(a). But, as we have concluded, the appraisal order is not an injunction. And, in any event, Positano did not seek an injunction under the All Writs Act, nor did the district court invoke that act in issuing the appraisal order. *Cf. U.S. Army Corps*, 424 F.3d at 1132 (rejecting an argument that an injunction was issued under the All Writs Act in part because the district court never invoked the All Writs Act in its order).

[6] Our dissenting colleague, after concluding that the appraisal order is explicitly an injunction, suggests that our analysis here indicates that the district court abused its discretion or otherwise demonstrates that Empire's arguments as to why the appraisal order should be vacated have merit. *See* Dis. Op. at 9–11. We respectfully disagree. Our analysis here simply goes to show *why* the district court's appraisal order is *not* an explicit grant of an injunction. We do not opine on any of Empire's arguments on the merits, i.e., on whether the district court erred in entering the appraisal order.

congressional policy against piecemeal review will preclude inter-locutory appeal."); *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1278–79 (11th Cir. 1988).  In *United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998), we summarized the re-quirements laid out in *Carson* and *Gulfstream* for appellate jurisdic-tion of an interlocutory order under § 1292(a)(1) as follows: (1) "if the relief sought is not actually an injunction, then it must have the practical effect of an injunction"; and (2) "the appellant must show that the interlocutory order of the district court 'might have a seri-ous, perhaps irreparable, consequence, and that the order can be effectually challenged only by immediate appeal.'"  *Id.* at 973 (quot-ing *Carson*, 450 U.S. at 84); *accord Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 170 (5th Cir. Unit B Aug. 1981); *United States v. Bowman*, 341 F.3d 1228 (11th Cir. 2003).  Thus, "[i]f relief may be obtained upon review after trial, the parties are not considered to have suf-fered irreparable consequences." *Admin. Mgmt. Servs.*, 854 F.2d at 1279.

We have not decided the issue of whether an order compel-ling appraisal, and staying the proceedings pending appraisal, satis-fies the requirements set forth by *Carson*—and summarized by us in *City of Hialeah*.  *See City of Hialeah*, 140 F.3d at 973; *Carson*, 450 U.S. at 84.  And applying those requirements, we conclude that nei-ther component of *City of Hialeah*'s second requirement is satisfied by the order compelling appraisal in this case.  Indeed, the appraisal order does not have some "serious, perhaps irreparable conse-quence." *See id.*  The district court's order does *not* entitle Positano to judgment on its claims against Empire.  And while the appraisal

process is binding on the parties as to the *amount* of the loss, Empire can still pursue its defenses of coverage denials as a whole and to specific buildings owned by Positano in the district court once the appraisal process concludes. *See State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1287–88 (Fla. 1996). And if Empire is unsuccessful in the district court following the conclusion of the appraisal proceedings, it can still obtain relief upon review after trial by appealing any final judgment against it—meaning that the order is not effectively challengeable only by immediate appeal.[7]  *See Admin.*

---

[7] We respectfully disagree with our dissenting colleague that the *City of Hialeah* requirements are limited only to interlocutory orders that have the practical effect of denying an injunction. *See* Dis. Op. at 27–29. First, our precedent in *City of Hialeah* did not make such a distinction in setting forth the requirements. *See City of Hialeah*, 140 F.3d at 973. Additionally, the Supreme Court, in concluding that an "analogous" provision to § 1292(a)(1)—28 U.S.C. § 1253—encompassed orders with the "practical effect" of granting or denying an injunction, rejected the appellees' argument that "an order denying an injunction (the situation in *Carson*) and an order granting an injunction (the situation here) should be treated differently." *Abbot*, 138 S. Ct. at 2320–21. The Supreme Court noted that, not only did the appellees "offer no convincing reason for" drawing such a distinction, "[n]o authority supports their argument." *Id.* at 2321. The Court explained that "[t]he language of §§ 1253 and 1292(a)(1) makes no such distinction" and that "the 'practical effect' analysis applies to the 'granting or denying' of injunctions." *Id.* (citing *Gulfstream*, 485 U.S. at 287–88). The Court also reasoned that "appellees' suggested distinction would put appellate courts in an awkward position . . . [and] needlessly complicate appellate review." *Id.* The Court's reasoning in *Abbott* thus supports our conclusion that the *City of Hialeah* requirements are not limited to interlocutory orders that have the practical effect of denying an injunction.

Moreover, we are bound to follow our prior binding precedent unless and until it is overruled by this Court en banc or the Supreme Court. *United States v.*

*Mgmt. Servs.*, 854 F.2d at 1279 ("If relief may be obtained upon review after trial, the parties are not considered to have suffered irreparable consequences."); *see also Bowman*, 431 F.3d at 1237 ("What makes an issue *effectively* unreviewable on appeal is the insufficiency of the remedy after final judgment." (quoting *United States v. One Parcel of Real Prop. With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1497 (11th Cir. 1985))).

While Empire raises out-of-circuit authority to argue that the order compelling appraisal is rooted in an action for specific performance of a contract that is treated as an injunction, *see, e.g.*, *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222–23 (10th Cir. 2009); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1333 (7th Cir. 1983), we do not find those cases persuasive here. In *Westar Energy*, the Tenth Circuit found that the district court's order, in which the court ordered the appellant to pay the appellee's legal expenses and expressly invoked its equitable powers, was a preliminary injunction. 552 F.3d at 1222. The Tenth Circuit stated that "[a]n action seeking to enforce the right to advancement [of legal fees] is an action for specific performance of a contract," that specific performance "is an equitable remedy," and that "an interim grant of specific relief is a preliminary injunction." *Id.* at 1222–23. And the Tenth Circuit declined to apply *Carson*'s "serious, perhaps irreparable,

*Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008). We therefore are bound to apply the *City of Hialeah* requirements in determining whether we can review the order granting the motion to compel appraisal in this case.

consequence" requirement because it construed that requirement as applying only "in situations where orders have the practical effect of denying an injunction." *Id.* at 1223 ("[O]rders which themselves grant or deny injunctive relief are appealable as injunctions under 28 U.S.C. § 1292(a)(1) without the *Carson* showing." (citing *Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997))).

But unlike *Westar Energy*, the district court in this case did not order appraisal based on its "equitable powers." Moreover, the "relief" granted by the district court was not enforcement of a right to advancement of fees but an order sending the parties to a contractually-anticipated alternative dispute resolution process that would not dispose of the underlying claims or defenses in the case. Further, even if the Tenth Circuit correctly determined that the order in *Westar Energy* was substantively a preliminary injunction such that *Carson*'s "serious, perhaps irreparable, consequence" requirement did not apply, *see id.*, for the reasons explained above, we conclude that the district court's order compelling appraisal did *not* explicitly grant an injunction. Therefore, we are bound to apply the *City of Hialeah* requirements of the interlocutory order having the practical effect of an injunction and having "serious, perhaps irreparable, consequence." *See* 140 F.3d at 973. Thus, we do not find *Westar Energy* dispositive here.[8]

---

[8] Because we conclude that the order compelling appraisal in this case did not explicitly grant an injunction, we also decline to follow the Tenth Circuit's unpublished decision of *Fireman's Fund Insurance Co. v. Steele Street Ltd. II*, No. 19-1096, 2022 WL 39392 (10th Cir. Jan. 5, 2022), in which the Tenth Circuit applied *Westar Energy* to conclude that the *Carson* requirements were

Additionally, in *Hayes*, the Seventh Circuit provided no analysis of why it had appellate jurisdiction under § 1292(a)(1) to review the order; the court simply concluded that it did. 722 F.2d at 1333. Given the lack of jurisdictional analysis by the Seventh Circuit, we decline to follow *Hayes*. And notably, Judge Posner dissented in *Hayes* on the basis that there was no jurisdiction to hear an interlocutory appeal of an order compelling appraisal. *See id.* at 1336 (Posner, J., dissenting). In doing so, Judge Posner specifically noted that there was no possibility of irreparable harm from the district court's order because any delay to the plaintiffs' lawsuit while appraisal was ongoing "would be trivial, and certainly could not harm them irreparably." *Id.* at 1336–37 (citing *Carson*, 450 U.S. at 84). And, if the plaintiffs disagreed with the results of the appraisal, "they could—just as soon as the district court entered its final judgment on the basis of the appraisal—file the same appeal they have filed from the stay; and if we then reversed the district court's judgment the appraisal would have caused the plaintiffs no harm at all." *Id.* We agree with Judge Posner's characterization of the lack of irreparable harm to a party that is ordered to appraisal. And, under *City of Hialeah*, some serious or irreparable consequence is required for an interlocutory order to be appealable under the injunction analogy theory. 140 F.3d at 973. Simply put, the district court's interlocutory order compelling appraisal—which, again, did not explicitly grant an injunction—does not implicate such serious or

---

inapplicable and that it had jurisdiction over an order enforcing an insurance policy's appraisal provision under § 1292(a)(1). *Id.* at *4.

irreparable consequence to a party as to satisfy *City of Hialeah*'s requirements.

As a final note, we recognize that Florida courts do not require a party seeking to enforce an appraisal provision in an insurance policy to file a motion for injunctive relief. *See People's Tr. Ins. Co. v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. Dist. Ct. App. 2019) ("After a homeowner has filed suit, it may be more traditional for an insurer to move to compel an appraisal to seek enforcement of the policy provisions . . . ."); *see, e.g., People's Tr. Ins. Co. v. Marzouka*, 320 So. 3d 945 (Fla. Dist. Ct. App. 2021); *First Protective Ins. Co. v. Colucciello*, 276 So. 3d 456 (Fla. Dist. Ct. App. 2019); *People's Tr. Ins. Co. v. Tracey*, 251 So.3d 931 (Fla. Dist. Ct. App. 2018). Florida courts grant motions to compel appraisal when "the parties have agreed to [appraisal] and the court entertains no doubts that such an agreement was made." *Marzouka*, 320 So. 3d at 947–48 (emphasis removed) (quoting *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. Dist. Ct. App. 1994)).

Accordingly, because the district court's interlocutory order compelling appraisal and staying the proceedings did not explicitly grant an injunction and does not satisfy all the requirements set forth by our decisions in *Administrative Management Services* and *City of Hialeah*, it is not appealable under § 1292(a)(1). We therefore lack appellate jurisdiction to review the order.

## B. Whether an Order Compelling Appraisal Is Appealable Under the FAA

We now turn to the issue of whether the order compelling appraisal in this case—which was ordered based on an appraisal provision in an insurance policy—is appealable under the FAA. The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA governs the appealability of an order ruling on a motion to compel arbitration. Under 9 U.S.C. § 16(a)(3), an appeal may be taken from "a final decision with respect to an arbitration." Conversely, under § 16(b)(1) and (3), an appeal may not be taken from an interlocutory order that grants a stay of any action under 9 U.S.C. § 3—providing for stays of proceedings where an issue in the suit is referable to arbitration—or that compels arbitration under 9 U.S.C. § 206.

Federal policy behind the FAA favors arbitration agreements, *Wasyl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987), and the FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But Congress did not define the term "arbitration" in the FAA. *Salt Lake Trib. Publ'g Co. v. Mgmt. Plan., Inc.*, 390 F.3d 684, 688 (10th Cir. 2004).

Here, we are presented with an order granting a party's motion to compel appraisal based on an appraisal provision in an

insurance policy.  We have not decided the question of whether an appellate court looks to state or federal law in determining whether an appraisal process falls within the definition of "arbitration" for purposes of the FAA, nor has the Supreme Court directly addressed the question.  *But see Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1239–40 (11th Cir. 2008) (articulating "a test for resolving whether a particular dispute resolution procedure is FAA 'arbitration'").

But we need not decide this issue because even assuming for the sake of argument that the order compelling appraisal here fell within the definition of arbitration for purposes of the FAA, we still lack appellate jurisdiction over the district court's order.  Section 16(a)(3) allows for an appeal from "a final decision with respect to an arbitration that is subject to this title" and is interpreted "according to the 'well-developed and longstanding meaning' of a 'final decision.'"  *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1154 (11th Cir. 2019) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000)).  And "[a] final decision 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'"  *Id.* (quoting *Green Tree*, 531 U.S. at 86).  For the reasons explained above, the district court's order compelling appraisal and staying the case pending appraisal is not a final decision.  And because § 16(b)(3) specifically states that "an appeal may not be taken from an interlocutory order . . . compelling arbitration"—and § 16(b)(1) likewise makes "an interlocutory order . . . granting a stay" pending referral of arbitrable issues to arbitration not immediately appealable—we lack appellate

jurisdiction over the order compelling appraisal even if appraisal were to be considered arbitration for purposes of the FAA.

## IV.    CONCLUSION

For the reasons discussed, we conclude that the district court's order compelling appraisal and staying the proceedings pending appraisal is an interlocutory order that is not immediately appealable under either 28 U.S.C. § 1292(a)(1) or the Federal Arbitration Act.  We therefore dismiss the appeal for lack of appellate jurisdiction.

**APPEAL DISMISSED.**

22-11059          TJOFLAT, J., Dissenting          1

TJOFLAT, Circuit Judge, dissenting:

I dissent from the Majority's dismissal of these consolidated appeals for lack of jurisdiction under § 1292(a)(1). The Majority holds that we lack jurisdiction because the injunction that the District Court entered (the "Appraisal Order") is not an injunction as that word is used in § 1292(a)(1) and thus is not reviewable. Although the language of the Appraisal Order plainly reveals an injunction, the Majority holds, in effect, that this does not matter. Instead—according to the Majority—what matters is that the appellant, Empire Indemnity ("Empire"), has not shown that the appellee, Positano Place ("Insured"),[1] was entitled to the injunction. In other words, because Insured failed to make out a case for injunctive relief, the Appraisal Order is not an injunction.

I dissent for two main reasons. First, the Appraisal Order is an "interlocutory order" and an "injunction" as those words appear in § 1292(a)(1) because it both commands Empire to do something and is enforceable by contempt.[2] It is therefore reviewable. Second, the District Court had the inherent power to issue the

---

[1] I refer to the appellees in these consolidated appeals collectively as "Insured."

[2] 28 U.S.C. § 1292(a)(1) states:

> Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from: [i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

2                    TJOFLAT, J., Dissenting                    22-11059

injunction under the All Writs Act.[3]  The Majority's opinion gives no indication that the Majority even considered whether the District Court's inherent power provided the authority to issue the order.  The Majority was nearsighted.  As its opinion indicates, it looked only to Insured's complaint for the source of the District Court's authority. Specifically, it looked for a cause of action seeking relief in the form of the Appraisal Order and found nothing. Since there was nothing to support the issuance of the Appraisal Order, it could not be an injunction as the term is used in § 1292(a)(1), and we could not entertain these appeals.

I organize my dissent as follows.  Part I presents the injunction, shows that the injunction is reviewable under § 1292(a)(1), and sets the stage for the Majority's focus on Insured's complaint as the source of authority for the District Court's issuance of the

---

[3] As explained below in Section II.C., the District Court issued the Appraisal Order pursuant to its inherent power to manage a case to final judgment.  That power is acknowledged in § 14 of the Judiciary Act of 1789:

> *And be it further enacted,* That all the before-mentioned courts of the United States, shall have power to issue writs of *scire facias, habaeas corpus*, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law.

ch. 20, § 14, 1 Stat. 73, 81.  Section 14 was codified in the All Writs Act, 28 U.S.C. § 1651(a).  The Appraisal Order is a permanent injunction in the sense that the District Court did not reserve its decision on the applicability of the insurance policy's appraisal provision.  The order compelling an appraisal was the court's final word on the application of the appraisal provision.

22-11059              TJOFLAT, J., Dissenting              3

Appraisal Order. Part II centers on what appears to be the Majority's reasons for determining that the Appraisal Order is not an injunction. First, the Insured's complaint lacked a cause of action for the Appraisal Order. Second, the District Court failed to comply with the procedural rules governing a traditional interlocutory injunction. Notably, what the Insured sought was not based on its complaint but on the need for an appraisal so that the case could proceed to trial. I explain that the District Court had the inherent power, now codified in the All Writs Act, to issue this order. Part III demonstrates the impracticality of the Majority's decision to deny Empire § 1292(a)(1) review of the Appraisal Order because it can instead obtain § 1291 review of the Appraisal Order by appealing the final judgment after the trial of the case. Part IV explains why the Majority's additional theory for dismissing these appeals is irrelevant, in part because the theory applies in appeals from the *denial* of an interlocutory injunction, not in the *grant* of an interlocutory injunction as in the instant cases. Part V posits that the Majority's analysis of the jurisdictional issue presented is unwise from the standpoint of judicial administration and this Court's relationship with district courts. Part VI briefly concludes.

**I.**

*A.*

I begin my discussion by reciting the operative provisions of the District Court's order.

> 3. Plaintiff's Motion to Compel Appraisal and Stay Proceedings is **GRANTED**. The parties

4                    TJOFLAT, J., Dissenting                    22-11059

are **ORDERED** to expeditiously conduct an appraisal as prescribed by the appraisal provisions of the Policy. The appraisal award will delineate between the specific coverages offered under the Policy for each unique building.

4. The case is **STAYED** pending appraisal, and the Clerk must add a stay flag to the file.

5. The parties are **DIRECTED** to file a joint report on the status of appraisal on or before **June 8, 2022**, and every **ninety days** thereafter until appraisal has ended.

6. Within **seven days** of appraisal ending, the parties are **DIRECTED** to jointly notify the Court of (a) what issues, if any, remain for the Court to resolve; (b) whether the stay needs to be lifted; and (c) how this action should proceed, if at all.

7. If the parties cannot agree on the selection of appraisers and an umpire, they must notify Judge McCoy by **March 24, 2022**. Any dispute over the selection of appraisers and an umpire is **REFERRED** to Judge McCoy to conduct a conference and issue any appropriate order. All parties must **ATTEND** the conference as directed by Judge McCoy.[4]

---

[4] Record, vol. I, no. 60, at 10 (citations omitted).

22-11059              TJOFLAT, J., Dissenting                    5

The order the District Court issued is an injunction because (1) it commands Empire to do something (engage in an appraisal) and (2) it is enforceable under the District Court's inherent civil contempt power. *See Nken v. Holder*, 556 U.S. 418, 428, 129 S. Ct. 1749, 1757 (2009) ("[An injunction] is a means by which a court tells someone what to do or not to do. When a court employs 'the extraordinary remedy of injunction,' . . . it directs the conduct of a party, and does so with the backing of its full coercive powers." (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 1803 (1982))); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) (defining an injunction as "(1) a clearly defined and understandable directive by the court to act or refrain from a particular action; and (2) enforceable through contempt, if disobeyed"); *Injunction*, *Black's Law Dictionary* (11th ed. 2019) (defining "injunction" as "[a] court order commanding or preventing an action"); 2 Joseph Story, *Commentaries on Equity Jurisprudence* § 861, at 57 (9th ed. 1866) ("A Writ of Injunction may be described to be a judicial process, whereby a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ."); 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2 (1909) ("In a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing.").

6                    TJOFLAT, J., Dissenting                    22-11059

To determine whether an order is an injunction, "courts look not to terminology, but to 'the substantial effect of the order made.'" *McCoy v. La. State Bd. of Educ.*, 345 F.2d 720, 721 (5th Cir. 1965) (per curiam) (quoting *Ettelson v. Metro. Life Ins. Co.*, 317 U.S. 188, 192, 63 S. Ct. 163, 165 (1942).[5] We take a "functional approach, looking not to the form of the district court's order but to its actual effect." *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 280 F.3d 1289, 1293 (11th Cir. 2002) (quoting *Sierra Club v. Marsh*, 907 F.2d 210, 213 (1st Cir. 1990)); *see also Gautreaux v. Chi. Hous. Auth.*, 178 F.3d 951, 956–57 (7th Cir. 1999) ("This court has repeatedly held that it will look beyond labels such as 'clarification' or 'modification' to consider the actual effect of the order.").

The *effect* of the Appraisal Order will be to compel Empire to submit to an appraisal that will be introduced at the trial to prove the loss Insured sustained because of the catastrophe it insured against. This satisfies the first element of an injunction: an order commanding a party to perform an act.

As to the second element, the order is enforceable via the District Court's inherent civil contempt power.[6]   How could it not

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6] The Judiciary Act of 1789 recognized the courts' contempt power in § 17: "*And it be further enacted,* That all the said courts of the United States shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same." ch. 20, § 17, 1 Stat. 73, 83.

22-11059              TJOFLAT, J., Dissenting                    7

be?  If Empire refuses to participate in an appraisal, Insured will move the District Court for an order requiring Empire to show cause for its refusal.[7]  Insured's motion will simply cite the Appraisal Order and allege that Empire refuses to engage in an appraisal as ordered.  Accepting the allegation as true, the District Court will enter an order requiring Empire to show cause for its refusal.  At the show cause hearing, Empire will be obliged to present a legal excuse for its refusal or face a civil contempt adjudication and a sanction for its refusal (probably a daily fine until Empire purged its contempt and submitted to an appraisal).  If the District Court reduces an adjudication and sanction to a judgment, Empire could appeal that judgment to this court under 28 U.S.C. § 1291.[8]

In sum, taking the "functional approach" former Chief Judge Ed Carnes took in *Birmingham Fire Fighters Ass'n 117*, we must treat the Appraisal Order as an injunction because it commands Empire to perform an act, and it is enforceable pursuant to the District Court's contempt power.

### B.

In holding that the Appraisal Order is not an injunction, the Majority relies in part on the parties' responses to our request for

---

[7] In Part III, I describe what will take place in the District Court after we dismiss this appeal for lack of jurisdiction *if* Empire refuses to engage in the ordered appraisal.

[8] 28 U.S.C. § 1291 states in pertinent part: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

8                    TJOFLAT, J., Dissenting                    22-11059

submissions on our jurisdiction under § 1292(a)(1) and the parties' briefs.[9] *Ante* at 3, 12–14. Empire insisted that the Appraisal Order was a reviewable interlocutory order under the statute. Insured disagreed and argued that the Appraisal Order did not involve a claim for injunctive relief. Neither side, however, considered whether the District Court may have derived its authority to issue the Appraisal Order from a source other than Insured's complaint, to wit: the District Court's inherent power. So, the Majority joined the parties in focusing on the Insured's complaint for the source of the District Court's authority to issue the Appraisal Order and thus in determining whether we had § 1292(a)(1) jurisdiction. The allegations of Insured's complaint (and Empire's response) therefore prescribed the parameters of the District Court's power to act.

As indicated in Part II below, the Majority found nothing in the complaint that would support an order requiring Empire to submit to an appraisal. Moreover, the Majority strongly implies that the District Court, in entering the Appraisal Order, abused its discretion in disregarding altogether the standards traditionally governing the issuance of injunctions. For these appeals to

---

[9] In deciding whether we had § 1292(a)(1) jurisdiction on the theory that the Appraisal Order was an injunction, we were obligated to consider the record *sua sponte*, "notwithstanding the contentions of the parties. That is so because subject-matter jurisdiction underlies a court's power to hear a case." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citation omitted); *see also Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

22-11059              TJOFLAT, J., Dissenting              9

proceed, Empire—bearing the burden of establishing our jurisdiction—had to establish that the District Court did not abuse its discretion.[10] Empire has failed to do that; hence, the dismissal of these appeals.

**II.**

*A.*

According to the Majority, the District Court's issuance of the Appraisal Order was an abuse of discretion for the following reasons:

> First, [Insured] did not move for an injunction, nor did it pursue any claim for injunctive relief in its operative complaint. Rather, [Insured] simply moved to compel an appraisal based on the appraisal provision in the Policy that was agreed to by the parties. Second, in granting the motion, the district court did not make the findings of fact and conclusions of law that normally support an order granting injunctive relief. Nor did the district court comply with the requirements set forth in Federal Rule of Civil Procedure 65(d). *Cf. Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1247 (11th Cir. 2012) (Pryor, J., concurring) ("'[T]he absence of any semblance of effort by the [d]istrict [c]ourt to comply with Rule 65(d)' is *evidence* that the district court did not intend to enter 'an order granting an injunction.'"

---

[10] If Empire established that the District Court did not abuse its discretion, thus giving us § 1292(a)(1) jurisdiction, how would Empire prevail on the merits, having established that the District Court did not abuse its discretion in granting injunctive relief?

(quoting *Gunn v. Univ. Comm. to End the War in Viet Nam*, 399 U.S. 383, 389 n.4 (1970))).

*Ante* at 12–13 (emphasis added)[11] (footnote omitted) (other citations omitted).

With these recitals, the Majority demonstrates that Empire's appeal has merit—the Appraisal Order should be vacated on the ground that the District Court abused its discretion in entering it. The District Court abused its discretion because its decision to issue the Appraisal Order was based on errors of law: it granted relief that Insured's complaint did not seek, and it compounded that error by failing to support the Appraisal Order with findings of fact and conclusions of law and by failing to comply with Rule 65(d). But instead of exercising § 1292(a)(1) jurisdiction and vacating the Appraisal Order, we use the District Court's errors as the basis for dismissing these appeals for want of jurisdiction. And we do so notwithstanding that the Appraisal Order is an injunction.

I am aware of no precedent for this disposition.[12] What is the warrant for it? A desire to avoid opening the appellate

---

[11] I emphasize "evidence" because that is all the noncompliance is, a piece of circumstantial evidence that, when considered in isolation, proves nothing—especially in the face of the coercive (injunctive) provisions the District Court placed in the Appraisal Order. To determine whether the Appraisal Order is an injunction, we look to what the issuing court *did* and to the "substantial effect" of its order, *McCoy*, 345 F.2d at 721, which was to require Empire to engage in an appraisal.

[12] As I explain in Part IV, none of the cases the Majority cites support this disposition.

"floodgate" to the review of "orders that have no direct or irreparable impact on the merits of the controversy"?[13] More about all of that later. For now, I will follow the Majority's lead and decide whether we lack jurisdiction because the District Court lacked a lawful basis for issuing the injunction. That is, for purposes of discussion, I will assume that our jurisdiction depends on whether Empire can show that the District Court's issuance of the injunction was not an abuse of discretion. In carrying out this exercise, I will dissect the portions of the Majority's opinion quoted above for the purpose of interlineating and explaining what I believe the Majority is actually saying.

### B.

Under the Majority's logic, Empire cannot appeal the Appraisal Order because Insured's complaint did not allege a cause of action (for an appraisal order), i.e., a "traditional" injunction. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("[T]raditional injunctions are predicated on [a] cause of action . . . ."). Although its complaint did not state a cause of action for an order compelling Empire to engage in an appraisal, Insured nonetheless "moved [the District Court] to compel an appraisal based on the appraisal provision in the Policy that was agreed to by the parties," *ante* at 12, and the District Court granted this motion. But the District Court failed to obey the law: it "did not make the findings of fact and conclusions of law that normally support an

---

[13] *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480, 98 S. Ct. 2451, 2453 (1978).

12                    TJOFLAT, J., Dissenting                    22-11059

order granting injunctive relief." *Ante* at 12 (citing *Klay*, 376 F.3d at 1097). "Nor did the district court . . . comply with the requirements set forth in Federal Rule of Civil Procedure 65(d)." *Ante* at 12–13 (citing *Sargeant*, 689 F.3d at 1244 (Pryor, J. concurring)).

Regarding the District Court's failure to make the findings of fact and conclusions of law that normally support an order granting an injunction, the Majority is referring to two things: (1) Federal Rule of Civil Procedure 52(a),[14] and (2) the standards articulated in *Klay* that are necessary for compliance with Rule 52(a)(2):

> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the

---

[14] Rule 52(a) states in relevant part:

(a) FINDINGS AND CONCLUSIONS.

 (1) *In General.* In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

 (2) *For an Interlocutory Injunction.* In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.

threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Ante* at 12 (quoting *Klay*, 376 F.3d at 1097).

In quoting this language, the Majority focuses on the showing the District Court should have required Insured to make to obtain a preliminary injunction[15]—not the traditional injunction the Majority believes Insured should have pleaded in its complaint. According to the Supreme Court, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ of Texas v. Camenisch*, 451 U.S 390, 395, 101 S. Ct. 1830, 1834 (1981).[16]

---

[15] The "factors [quoted in the above text] are the elements for receiving a preliminary injunction." *Klay*, 376 F.3d at 1097.

[16] The Supreme Court elaborated on this point:

Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.

14                    TJOFLAT, J., Dissenting                    22-11059

To obtain a preliminary injunction in this case, Insured would have to show that it would likely succeed on the merits of a cause of action asserted in its complaint, i.e., a cause of action praying for an appraisal order.  Insured did not plead a cause of action for an appraisal, though.  It did not because it wasn't seeking a preliminary injunction so that the status quo ante could be maintained until a trial on the merits could be held.  Thus, the District Court's failure to make the findings and conclusions the Majority quotes from *Klay* is entirely irrelevant.[17]

I also disagree with the Majority regarding the District Court's compliance with Rule 65(d).  A failure to meet the specificity requirements of Rule 65(d) would not deprive our Court of jurisdiction over the Appraisal Order.  *See Abbott v. Perez*, 138 S. Ct. 2305, 2321, 201 L. Ed 2d 714 (2018).  The Supreme Court has "never suggested that a failure to meet the specificity requirements of Rule 65(d) would 'deprive the Court of jurisdiction.'"  *Id.* (quoting *Gunn v. Univ. Comm. to End War in Viet Nam*, 399 U.S. 383, 389 n. 4, 90 S.

---

*Camensich*, 451 U.S. at 395, 101 S. Ct. at 1834 (citations omitted).

[17] As an aside, it should go without saying that trial judges issue interlocutory injunctions on many occasions during the litigation of a case for purposes unrelated to providing a remedy for a cause of action alleged in the complaint.  And they do so without issuing findings of fact and conclusions of law or a written order containing Rule 65(d)'s requirements.  If the injunction is appealed, the appellate court may affirm because the record of the proceeding implies the necessary findings and conclusions.  If the record does not enable meaningful appellate review, then the appellate court may vacate the injunction.

22-11059                TJOFLAT, J., Dissenting                15

Ct. 2013 (1970)).[18]  Rather, "it would be odd to hold that there can be no appeal in such a circumstance" because "[w]here a vague injunction does not comply with Rule 65(d), the aggrieved party has a particularly strong need for appellate review." *Id.* at 2321.  That is, when a district court neglects to provide the necessary clarification mandated by Rule 65(d), thereby leaving the party uncertain about the court's commands, that party should have the option to seek our review.

But even if we entertain the Majority's notion that Rule 65(d) has relevance to our jurisdiction, the Appraisal Order has fully

---

[18] The Majority's reliance on *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1247 (11th Cir. 2012) (Pryor, J. concurring) (quoting *Gunn v. Univ. Comm. to End the War in Viet Nam*, 399 U.S. 383, 389 n.4, 90 S. Ct. 2013 (1970)), is misplaced because *Gunn* was distinguished by *Abbott v. Perez*, 138 S. Ct. 2305, 201 L. Ed. 2d 714 (2018).

> [A]s explained in *Gunn v. University Comm. to End War in Viet Nam*, 399 U.S. 383, 389, n. 4, 90 S. Ct. 2013, 26 L.Ed.2d 684 (1970), we have never suggested that a failure to meet the specificity requirements of Rule 65(d) would "deprive the Court of jurisdiction under § 1253."
>
> A contrary holding would be perverse.  Rule 65(d) protects the party against which an injunction is issued by requiring clear notice as to what that party must do or refrain from doing.  Where a vague injunction does not comply with Rule 65(d), the aggrieved party has a particularly strong need for appellate review.  It would be odd to hold that there can be no appeal in such a circumstance.

*Abbott*, 138 S. Ct. at 2321.

satisfied its requirements.  Rule 65(d) states that all orders granting injunctions must: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  The record and Appraisal Order itself reveal precisely why the order issued, the order states its terms specifically, and it informs Empire of the action the District Court expected it to take.  Rule 65(d)'s purpose is to "protect[] the party against which an injunction is issued by requiring clear notice as to what that party must do or refrain from doing."  *Abbott*, 138 S. Ct. at 2321.  There is not a shadow of a doubt about what Empire is to do.  It is crystal clear.  And if Empire finds it is unable to comprehend the Appraisal Order's requirements, it can ask the District Court for clarification, a customary practice within trial courts.

To summarize, the District Court did not abuse its discretion in issuing the Appraisal Order. The Majority's analysis of the District Court's action focuses on whether the Court based its decision on Insured's complaint.  Insured did not move for the Appraisal Order based on a cause of action in its complaint.  The Majority says Insured failed to establish the requirements for a preliminary injunction, but Insured didn't seek a preliminary injunction.  A preliminary injunction would have restored the parties to the status quo ante, which would not have benefitted Insured.  Insured wanted an order granting its contract right to an appraisal.

The Majority's focus on Rule 52(a)(2) is irrelevant because the facts are in granite: the insurance policy gives Insured an

unequivocal right to an appraisal, and Empire resists being ordered to submit to one. As for Rule 65(d), we are bound by Supreme Court precedent affirming its irrelevance to our jurisdiction, and regardless, the Appraisal Order contains all that Rule 65(d) requires.

### C.

The Majority is correct in stating that Insured's complaint did not seek an appraisal order based on a cause of action asserted. But the Majority fails to consider whether the District Court issued the Appraisal Order in the exercise of a district court's inherent power. Insured was seeking appraisal relief based solely on its insurance policy with Empire. Empire refused to provide it, so Insured—assuming that the District Court had the power to grant the relief as a matter of course to enable the case to proceed to trial—moved the District Court to step in.

Insured's motion was unsophisticated. It simply asked the District Court to require Empire to engage in an appraisal as Insured's policy provided. The case could not proceed to trial without an appraisal. And given Empire's resistance to an appraisal, an order requiring Empire to submit to one had to issue if the case was to go forward.

The District Court had the power to grant this relief in the exercise of its inherent power. And Insured didn't need to cite to that power for the District Court. The Supreme Court "has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily

18                    TJOFLAT, J., Dissenting                    22-11059

vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S. Ct. 1386, 1839 (1962)). District courts frequently exercise their inherent power in this way as a matter of course without reciting their inherent power as the source of their authority to act. As the former Fifth Circuit observed, "[t]he inherent powers doctrine . . . is rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). One of the tools is the injunction. It comes front and center when the remedy at law is inadequate.

In *Klay*, we observed that the All Writs Act "is a codification of the federal courts' traditional, inherent power." 376 F.3d at 1099. The Act's role is to facilitate the "[district] court's effort to manage the case to judgment." *Barton*, 569 F.2d at 1359.

> Whereas traditional injunctions are predicated upon [a] cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction . . . . The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to

> protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.

*Klay*, 376 F.3d at 1100.  Here, the concern is processing Insured's case to trial.  That is why the District Court entered the Appraisal Order.  The parties' insurance policy gave Insured (and Empire) the right to an appraisal.  Insured sought one.  Empire opposed its request and is doing so now.

The granting of Insured's motion was a classic application of the District Court's inherent power.  The District Court entered the injunction in aid of its responsibility to guide this case to a just conclusion.  Without the injunction ordering the appraisal, this case could not proceed to trial.  As *Barton* makes clear, the injunction's service is to facilitate the "court's effort to manage the case to judgment."  569 F.2d at 1359.  In the face of Empire's resistance, the law did not provide a mechanism that would ensure that an appraisal would be done so that a trial of the case could be held.

Entering an injunctive order to facilitate its management of the case was the district court's objective in *SEC v. Torchia*, 922 F.3d 1307 (11th Cir. 2019).  However, the district court committed a legal error in issuing the injunction and therefore abused its discretion.  But that didn't turn the injunction into a non-injunction and foreclose our § 1292(a)(1) jurisdiction.  Rather, we entertained the interlocutory appeal, corrected the error, and remanded the case for further proceedings.  I refer to that decision now because it demonstrates the value of § 1292(a)(1) review of an injunction issued pursuant to a district court's inherent power.

20                    TJOFLAT, J., Dissenting                    22-11059

### D.

*Torchia* involved a Ponzi scheme operated by James Torchia. *Id.* at 1311. Katherine and Richard Sutherland were victims. *Id.* at 1312. They paid CN Capital, a Torchia entity, for a life insurance policy on the life of Jimmy Martin in which they were the designated beneficiaries. *Id.* The SEC sued Torchia, bringing an end to the scheme, and the district court appointed a receiver for CN Capital to marshal its assets and distribute the proceeds thereof to its "Direct Investors," including the Sutherlands. *Id.* The district court ordered the Direct Investors either to assign their insurance policies to the receiver or remit to the receiver the value of the benefit they received from CN Capital including any "fictitious profit." *Id.*[19]

The receiver, acting under the district court's order, "demand[ed] that [the Sutherlands] either assign the Martin policy to him or remit $25,820.34 in purported fictitious profits." *Id.* When the Sutherlands refused to comply, the district court ordered them to assign the Martin policy or remit the $25,820.34 to the receiver. *Id.* at 1312–13.

The Sutherlands appealed the district court's order on the ground that "they were denied due process because the district court's summary proceedings did not provide them with a meaningful opportunity to present their claims and defenses [to the

[19] "'Fictitious profits' included 'the amount of premiums paid by CN Capital to keep the Direct Investors' policies in force, and the fair market value of other services provided to the Direct Investors by CN Capital.'" *SEC v. Torchia*, 922 F.3d 1307, 1312 (11th Cir. 2019).

receiver's claim] or to challenge the receiver's determinations or calculations related to the claimed fictitious profits." *Id.* at 1314. We entertained the appeal as an interlocutory appeal under § 1292(a)(1) and upheld the Sutherlands' due process argument with this statement:

> Under 28 U.S.C. § 1292(a)(1), we have jurisdiction to review certain interlocutory orders, such as those "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." "In determining what is an appealable order under § 1292(a)(1), courts look not to the terminology, but to the 'substantial effect of the order made.'"

> The district court's . . . order requiring the Sutherlands to either remit the purported fictitious profits or assign the Martin policy to the receiver, consistent with its prior order stating that all Direct Investors must remit fictitious profits or assign their policies, is an order "granting [or] continuing . . . [an] injunction" under § 1292(a)(1). It "command[s] . . . an action" concerning the merits of the relief requested by the receiver.

*Torchia*, 922 F.3d at 1314 (alterations in original) (second and third omissions in original) (citations omitted).[20]

---

[20] *Yeargin Constr. Co. v. Parsons & Whittemore Ala. Mech. & Servs. Corp.*, 609 F.2d 829 (5th Cir. 1980), and *Laje v. R.E. Thomason Gen. Hosp.*,

22                    TJOFLAT, J., Dissenting                    22-11059

In deciding to exercise its § 1292(a)(1) jurisdiction, the *Torchia* panel gave no legal significance to the fact that the district court's initial orders[21] were not based on a cause of action asserted in a complaint, on findings of fact and conclusions of law made pursuant to Rule 52(a)(2),[22] or in compliance with Rule 65(d). *See id.* at 1315. The district court issued the orders to enable the receiver to marshal CN Capital's assets. How else would the receiver marshal the assets? Bring an action at law against the Direct Investors and obtain money judgments and then writs of attachment or garnishment to satisfy the judgments? What about coercing the assignment of the life insurance policies to the receiver? No legal remedy I am aware of could do that.

To sum up, in issuing these injunctive orders, the district court simply drew on its inherent power to enable the court-appointed receiver to get its job done.

### III.

Assuming the Appraisal Order is an injunction, the Majority holds that it is not appealable under 28 U.S.C. § 1292(a)(1) because Empire can obtain appellate review of the order under 28 U.S.C.

---

564 F.2d 1159 (5th Cir. 1977), quoted in *Torchia*, constitute Eleventh Circuit precedent. *See Bonner*, 661 F.2d at 1207.

[21] The orders required "all Direct Investors [to] remit fictitious profits or assign their policies" to the receiver. *Torchia*, 922 F.3d at 1315.

[22] As for Rule 52(a) findings and conclusions, it is an everyday occurrence that we affirm district courts' decisions on the ground that they are based on findings and conclusions implied from evidence in the record.

§ 1291 "after trial by appealing any final judgment against it—meaning that the order is not effectively challengeable only by immediate appeal." *Ante* at 19. The Majority reinforces this holding with two parenthetical quotations: "('If relief may be obtained upon review after trial, the parties are not considered to have suffered irreparable consequences.'); ('What makes an issue *effectively* unreviewable on appeal is the insufficiency of the remedy after final judgment.')." *Ante* at 20 (first quoting *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1279 (11th Cir. 1988); and then quoting *Bowman*, 341 F.3d at 1237).

So, as the Majority sees it: Empire has an adequate remedy at law. It can challenge the Appraisal Order in appealing the final judgment pursuant to 28 U.S.C. § 1291. A requirement for the issuance of an injunction—an inadequate remedy at law—is missing. A review of the Appraisal Order pretrial under § 1292(a)(1) is therefore inappropriate.

I disagree with the Majority's position that Empire will be able to obtain appellate review of its challenge to the Appraisal Order in appealing an adverse final judgment under § 1291.[23] I do so for the reasons set out in Sections A, B, and C below.

### A.

The first reason for my disagreement with the Majority is that it ignores the probability that Empire's compliance with the Appraisal Order will moot its controversy with the District Court

---

[23] *See ante* at 19.

over the propriety of the Appraisal Order's issuance. The controversy will be moot even if Empire's compliance does not occur until after it has been held in contempt for refusing to comply with the order. Our precedent on this point is clear. "Once a contemnor has purged his contempt, he sacrifices his ability to challenge the merits of the underlying contempt order." *In re Grand Jury Subpoena Duces Tecum*, 955 F.2d 670, 672–73 (11th Cir. 1992). "[O]nce a civil contempt order is purged, no live case or controversy remains for adjudication." *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (per curiam) (collecting cases stating the same).

It is true that compliance with an injunction does not render the issue moot where it is possible to undo the effects of compliance. "Under settled law, we may dismiss the case [as moot] only if 'it is impossible for a court to grant any effectual relief whatever . . . .'" *Mission Prod. Holdings, Inc. v. Tempnology, LLC.*, 139 S. Ct. 1652, 1660, 203 L. Ed. 2d 876 (2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 1019 (2013)). There is nothing this Court could do to "undo the effects of compliance" in the situation here other than compensate Empire for the expense it incurred in complying with the Appraisal Order or recreate the status quo ante, and both are indeed problematic.[24]

*B.*

My second reason for disagreeing is that Empire can obtain appellate review after the cases return to the District Court. If

---

[24] *See infra* Part V.

22-11059                TJOFLAT, J., Dissenting                25

Empire refuses to comply with the Appraisal Order and is held in civil contempt, and the District Court imposes a sanction and enters a judgment for that sanction, Empire may appeal that judgment under § 1291.  A sanction entered as the result of a finding of contempt "render[s] the contempt judgment final and ma[kes] both the findings of contempt and the later sanction order appealable under 28 U.S.C. § 1291." *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1212 (11th Cir. 2019) (alterations in original) (quoting *Sizzler Fam. Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1533 n.1 (11th Cir. 1986)).  In prosecuting the § 1291 appeal, Empire could challenge the underlying Appraisal Order.  The review Empire would obtain under § 1291 in that situation would be the same as the review it would obtain under § 1292(a)(1) now.

## C.

My third reason for disagreeing with the Majority is this: Empire will likely comply with the Appraisal Order and litigate Insured's loss at trial via an appraisal; then, in appealing the final judgment under § 1291, Empire will seek a new trial based on the District Court's error in issuing the Appraisal Order.[25]  That will be giving Empire two bites at the apple.[26]  Empire's lawyers will read

---

[25] And Empire will likely prevail given the Majority's conclusion (in dismissing these appeals) that the issuance of the Appraisal Order constituted an abuse of discretion.

[26] With two bites at the apple, Empire will not seek appellate review of the Appraisal Order as described in Section III.B above.

our mandate that way and they will plan Empire's litigation strategy accordingly.

Empire will submit to an appraisal, and at trial, the appraisal will establish Insured's loss. If the appraisal is at least as favorable (to Empire) as the loss a jury would fix based on the evidence of loss presented at trial, Empire will accept the judgment based on the appraisal and close the case. But if Empire believes that a trial in which Insured has the burden of introducing evidence to prove its loss would yield a more favorable loss amount, it will appeal the final judgment under § 1291 and challenge the Appraisal Order.

During that appeal, Empire's lawyers will be armed with our opinion, which essentially determines that the District Court abused its discretion in issuing the Appraisal Order. Insured's lawyers will tell Insured that: (1) a reversal of the judgment is likely, (2) a new trial will be ordered, (3) preparing for a new trial in which Insured will have to prove its loss with live evidence will be very expensive, and (4) the loss the jury fixes based on the evidence Insured (and Empire) introduce at the new trial may be less than what the appraisal fixed. A cost-benefit analysis will inform Insured on whether to accept Empire's offer to settle for far less than it recovered at trial.

Faced with this dilemma, Insured will wonder why its lawyers moved the District Court for the Appraisal Order in the first place. They could have recommended that Insured not pursue an appraisal and suffer only one trial.

22-11059                TJOFLAT, J., Dissenting                27

## IV.

In reaching its decision to dismiss these appeals for lack of jurisdiction, the Majority asserts a reason other than the insufficiency of Insured's complaint for declining to exercise jurisdiction under § 1292(a)(1). It states that the Appraisal Order, itself, fails to demonstrate that Insured would suffer a "serious, perhaps irreparable consequence" if it is denied the relief the order provides. *Ante* at 17–19. To support this, the Majority draws upon five cases where the appeals each related to the denial of an injunction.[27] In my view, cases reviewing interlocutory orders denying an injunction are of a far different breed and should not be relied upon here. Nonetheless, Empire's compliance with the Appraisal Order will render this issue moot and thereby preclude our review of the

---

[27] *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 101 S. Ct. 993 (1981); *United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S. Ct. 1133 (1988); *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272 (11th Cir. 1988); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166 (5th Cir. Unit B Aug. 10, 1981) (refusing to dissolve an injunction). Aside from the denial-of-an-injunction cases, the Majority relies on only one other case, *United States v. Bowman*, 341 F.3d 1228 (11th Cir. 2003), to support the argument that Empire must satisfy a "serious, perhaps irreparable consequence" requirement to establish § 1292(a)(1) jurisdiction. However, it is important to note that *Bowman* is also not relevant to our current situation. In *Bowman*, the appellants were not challenging an injunction; instead, they were contesting an order that upheld an "*ex parte* seizure." *Id.* at 1229. Furthermore, this order was associated with an in rem forfeiture action. *Id.*; *see also supra* Part I (describing an injunction traditionally as an *in personam* order). Therefore, the *Bowman* case does not provide any guidance or relevance to our present case, which pertains to an appeal following the grant of an injunction.

Appraisal Order on final judgment.  So, this situation does indeed demonstrate the presence of serious, perhaps irreparable consequences.

In *Abbott*, the Supreme Court rejected the argument that, for jurisdictional purposes, there is a distinction between orders denying and granting injunctions.  *See* 138 S. Ct. at 2321.  Still, I emphasize the practical and legal distinctions in our review of injunction denials and grants, which could explain the "serious, perhaps irreparable consequence" language cited by the Majority.

When appealing an interlocutory order *denying* an injunction, the denial order itself will often lack the necessary detail to determine what exactly the district court has denied.  Thus, to provide the appellate panel with a clear understanding of the injunctive relief it was seeking, the movant must include the record of its application for the injunction.  This record will not only allow the panel to determine whether the movant sought an injunction enforceable via the district court's contempt power but also determine whether the district court's order addressed the movant's application in full.

Additionally, the legal consequences of declining to review an interlocutory *denial* of an injunction are distinct.  First, the denial of an interlocutory injunction is tentative and provisional, subject to reconsideration by the district court.  Second, if the injunction was sought in the plaintiff's complaint and its denial is reduced to a final judgment, the movant can obtain review of the denial under § 1291.  Finally, unlike Empire's situation here, a movant cannot

22-11059                TJOFLAT, J., Dissenting                29

obtain review of the denial of its application for injunctive relief by resisting the order and facing contempt charges. That is because the *denial* of an injunction is not enforceable by the district court's contempt power—that much is obvious.

Assuming the Appraisal Order remains in place on remand, this Court, in entertaining Empire's appeal of the adverse final judgment under § 1291, will have to decide the legal effect of the Appraisal Order's silence regarding the "serious, perhaps irreparable consequence" the denial of the order would have visited on Insured had the order been denied.

## V.

Our decision to dismiss these appeals for want of jurisdiction under § 1292(a)(1) is troubling. I posit that the decision will have a deleterious effect on our Court's reputation, its relationship with the district courts in our circuit, and, in turn, the respect of the district courts amongst the litigants in these cases and the litigants awaiting their turn in the district courts' queues. I begin with the consequences for our Court.

### *A.*

The Majority says we lack jurisdiction under § 1292(a)(1) because the Appraisal Order is not an injunction. It is not an injunction because the District Court abused its discretion in issuing it.[28]

---

[28] One could say that our determination that the District Court abused its discretion in entering the Appraisal Order is the raison d'être of our jurisdictional decision, and therefore a holding.

30                    TJOFLAT, J., Dissenting                    22-11059

In other words, if we accepted jurisdiction (because the Appraisal Order is an injunction) and entertained these appeals on the merits, Empire would prevail given the District Court's error. But Empire must now wait until the conclusion of the litigation to challenge the merits.

In this second appeal following the entry of final judgment, another panel of this Court, acting as a "recognizing" court, will have to decide whether to defer to our determination, as the "rendering" court, that the District Court abused its discretion in issuing the Appraisal Order. If the panel defers, Empire will receive a new trial, where Insured's loss will not be fixed by an appraisal.[29]

In asking the recognizing court to defer to our abuse-of-discretion determination, Empire will rely on the doctrine of collateral estoppel, arguing that our determination was made after the parties fully litigated the issue. Insured will oppose this, arguing that Empire's compliance with the Appraisal Order rendered moot the controversy over the order's validity. Empire will have complied with the order because we effectively invited it to, promising a second bite of the apple at the conclusion of the litigation. After Insured's case is tried and a final judgment is entered, Empire can obtain appellate review of the Appraisal Order in appealing that judgment. If the recognizing court agrees with Insured—that there is no longer an Article III case or controversy concerning the

---

[29] For a description of "rendering" and "recognizing" courts in the issue preclusion context, see *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1215–23 (11th Cir. 2017) (en banc) (Tjoflat, J., dissenting).

Appraisal Order's validity—our promise of a second bite will vanish, along with Empire's respect for the integrity of our decision-making. We will have made a false promise in holding that Empire could have a second bite. Empire had the opportunity to seek appellate review of the Appraisal Order pretrial under § 1291 by suffering a contempt adjudication, receiving a sanction, and appealing the corresponding judgment. However, relying on our promise, Empire forfeited this option.

As for efficiency, our decision to determine § 1292(a)(1) jurisdiction by looking to the merits of the enjoined party's challenge to the injunction is a form of make-work.[30] When we deny jurisdiction over interlocutory appeals of injunctions based on the merits, promising the enjoined party subsequent review upon final judgment, this Court ends up reviewing the same issue twice. The first panel finds no jurisdiction because the district court erred,[31] and then the second panel reviews those same merits, deciding again whether the injunction constituted an abuse of discretion. The first panel could avoid the second panel's work altogether if it instead entertained the interlocutory appeal, corrected the error,

---

[30] This part of the discussion assumes that the enjoined party suffered sufficient prejudice to claim that it should be granted a new trial. I posit that the entry of few interlocutory orders would result in a reversible error for lack of prejudice. Not so in the cases before us.

[31] One could say that our determination that the District Court's issuance of the injunction was an abuse of discretion (for jurisdictional purposes) would be an advisory opinion, like an answer to a hypothetical question, foreclosed by Article III.

and remanded the case for further proceedings, as we did in *Torchia*. We could also avoid the issue altogether by not assuring the enjoined party that this Court will review the injunction on appeal of an adverse final judgment—notwithstanding the enjoined party possibly mooting the issue through its compliance with the injunction.

I sense that the Majority fears that if we accept jurisdiction in this case, it will open § 1292(a)(1)'s floodgates and we will be inundated with appeals of interlocutory coercive orders, i.e., injunctions. This fear is unfounded. Most interlocutory injunctions are provisional,[32] subject to the district court's modification as the case moves toward trial. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377, 101 S. Ct. 669, 675 (1981) ("[W]e have generally denied review of pretrial discovery orders . . . ."). And review of provisional rulings, like pretrial discovery orders, are generally denied because our decision would be advisory, and therefore unconstitutional. *Banca Pueyo SA v. Lone Star Fund IX, L.P.*, 978 F.3d 968, 973 (5th Cir. 2020) (explaining that the issue in reviewing a provisional ruling is that "our decision would . . . be advisory").[33]   When

---

[32] I omit preliminary injunctions issued to maintain the status quo while the trial court reaches the merits of the plaintiff's causes of action.

[33] In *Risjord*, the Supreme Court expounded on its declination to review discovery orders with this statement: "Our rationale has been that in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." 449

22-11059              TJOFLAT, J., Dissenting              33

parties seek an advisory opinion, they fail to present a justiciable controversy. *Flast v. Cohen*, 392 U.S. 83, 95, 88 S. Ct. 1942, 1950 (1968)). As a result, these provisional injunctive orders are either not appealed or the order is summarily affirmed.

Occasionally, however, an interlocutory injunction is not provisional. That is the situation here. Insured's contract right is lost altogether unless enforced with an injunction like the Appraisal Order. The same is true when a district court orders a party to divulge privileged information. Absent the right to an interlocutory appeal, the enjoined party's only recourse would be to defy the injunctive order, face a contempt adjudication and sanction, and then appeal the resulting judgment under § 1291.

*B.*

How our method for determining whether we have § 1292(a)(1) jurisdiction affects the district courts will be of critical importance. Here, the District Court will learn that its issuance of the Appraisal Order constituted an abuse of discretion and, if the Appraisal Order remains in force, Empire may be entitled to a second trial.[34] No trial court relishes trying a case twice, but that may

---

U.S. at 377, 101 S. Ct. at 675 (citing *Cobbledick v. United States, 309 U.S. 323,* 327, 60 S. Ct. 540, 542 (1940)).

[34] What will the parties and the District Court perceive as the law of this case? That the Appraisal Order remains intact? By stating that this Court will entertain Empire's challenge to the Appraisal Order upon final judgment, we imply that the Appraisal Order has not been disturbed. This is one potential interpretation, as our dismissal for lack of jurisdiction hinges on the availability of

34                    TJOFLAT, J., Dissenting                    22-11059

occur here.  To avoid a second trial, considering our conclusion that the issuance of the Appraisal Order was an abuse of discretion, should the District Court accede to Empire's position and vacate the order?  What's at stake here?  On one side, we have Insured's contract right to an appraisal and a trial where the insurance loss is established by an appraisal.  Insured asked for the Appraisal Order because it believes that engaging in an appraisal will be less expensive than proving its loss with live testimony at trial.  On the other side, we have the District Court's docket and other litigants waiting to be heard.  A second trial would delay the consideration of their cases.

The district courts will look with disfavor on the two-bites-at-the-apple dismissal of § 1292(a)(1) appeals on the ground that the appellant failed to show that the challenged injunction was not an abuse of discretion.  To avoid the prospect of two trials, district courts will likely recognize that parties enjoined under the court's inherent power will only have the option of reviewing pretrial orders under § 1291. That is, through appealing a judgment that finds them in contempt and imposes sanctions.  Hearings on motions to show cause why the enjoined party should not be held in contempt

---

§ 1291 review.  However, when we do entertain Empire's challenge upon final judgment, will we grant Empire a new trial?  We have already said, in effect, that Empire will be entitled to one.  Alternatively, a future panel could treat our basis for dismissing these appeals—the District Court's abuse of discretion—as pure dicta.  In any case, in reviewing Empire's appeal under § 1291, we will have to address Insured's argument that Empire's appeal of this issue is moot—and that determination remains uncertain.

and sanctioned can be unpleasant, but the absence of § 1292(a)(1) review will likely lead to their increase.

## VI.

The Appraisal Order is an injunction on its face. We have § 1292(a)(1) jurisdiction to review it. The District Court entered the Appraisal Order pursuant to its inherent power, as codified in the All Writs Act, which is "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz*, 579 U.S. at 45, 136 S. Ct. at 1891. The injunction is one of the common law equity tools district courts use to achieve the just disposition of a case. District courts use this tool routinely, and they do so without announcing that they are issuing the injunctive order in the exercise of their "inherent power." The District Court used this tool here so the case could go forward to trial and final judgment.

The Appraisal Order is due to be affirmed. I respectfully dissent.